**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| JOHN ZABANEH ) | |
|     671 Ecumenical Drive ) | |
|     P.O. Box 64 ) | |
|     Dangriga, Stann Creek ) | |
|     Belize ) | |
| ) | |
|         *Plaintiff,* ) | CIV. NO. 17-cv-1430 |
| ) | |
| v. ) | |
| ) | |
| STEVEN T. MNUCHIN ) | **COMPLAINT** |
| in his official capacity as ) | |
| Secretary of the Department of the Treasury ) | |
|     1500 Pennsylvania Avenue, NW ) | |
|     Washington, DC 20220 ) | |
| ) | |
| ) | **ECF Case** |
|         *Defendant,* ) | |
|     And ) | |
| ) | |
| THE UNITED STATES DEPARTMENT ) | |
| OF THE TREASURY, OFFICE OF FOREIGN ) | |
| ASSETS CONTROL ) | |
|     1500 Pennsylvania Avenue, NW ) | |
|     Washington, D.C. 20220 ) | |
| ) | |
|         *Defendant.* ) | |
| _____ ) | |

**I.**

**<u>COMPLAINT</u>**

Plaintiff John Zabaneh hereby files his complaint against Defendants the United States

Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and Secretary of the

Treasury Steven T. Mnuchin, in his official capacity, and asserts as follows:

## II.

## <u>NATURE OF THE CASE</u>

1.     On or about August 7, 2012, acting pursuant to the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 *et. seq.*, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Plaintiff as a "specially designated narcotics trafficker" ("SDNTK").[1]  As a result of his designation, Plaintiff's property and interests in property within U.S. jurisdiction have been blocked, any future property entering the United States in which he maintains an interest will be blocked, and U.S. persons are barred from engaging in virtually all transactions with Plaintiff.

2.     In addition to the designations prohibiting any transactions in which Plaintiff maintains an interest with U.S. persons or coming under the jurisdiction of the United States, Plaintiff has also experienced a *de facto* prohibition on engaging in virtually all financial transactions outside of U.S. jurisdiction, including Belize.  Unable to engage in day-to-day financial transactions of either a personal or business nature, the welfare of Plaintiff and his family continue to be substantially prejudiced by the designations.

3.     Prior to his designation under the Kingpin Act, Plaintiff, a Belizean citizen, was living in Belize, where he was engaged in lawful commercial activity, including as serving as the manager of a large banana and citrus farm.  Following his Kingpin Act designation by U.S. authorities, all of Plaintiff's property within the United States was blocked, and he was ultimately forced to relinquish his ownership and/or control in property and assets held outside of U.S. jurisdiction

---

[1] PRESS RELEASE, *Treasury Targets Belize-Based Operatives of Chapo Guzman*, U.S. Dep't of the Treasury, Aug. 7, 2012, *available at* http://www.treasury.gov/press-center/press-releases/Pages/tg1674.aspx.

due to foreign financial institutions refusal to engage in any transactions or dealings with him or his businesses, citing his SDNTK designation.

4.       Due to OFAC's designation and the immediate blocking of Plaintiff's assets, Mr. Zabaneh, his family, and businesses suffered substantial economic and reputational harm, and Plaintiff has been effectively barred from operating his legitimate businesses.

5.       In response to his Kingpin Act designation, Plaintiff sought administrative recourse to rebut the evidence relied upon to designate him and to seek rescission of his designation.  To that end, Plaintiff filed a request for administrative reconsideration of his Kingpin Act designation on October 3, 2012.  The matter has remained pending before OFAC for more than four (4) and a half years, and yet OFAC has failed to provide any semblance of notice to Plaintiff of the information underlying his designation, and has thus been denied a meaningful opportunity to rebut the evidence underlying his designation.

6.       Due to Plaintiff's continued designation, Plaintiff, his family, and businesses continue to experience onerous obstacles in their day-to-day lives, including the deterioration of legitimate farming businesses, which have led to the laying off of hundreds of low income civilian farmers who were formerly employed by Plaintiff either directly or through his businesses.

7.       Despite the substantial harm that has resulted from his designation, Plaintiff's repeated attempts to resolve the matter administratively have been met with insufficient notice of the basis of his designation and unreasonable delay in resolving his reconsideration request, both in violation of OFAC's obligations under the United States Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., respectively.

8.       In addition, OFAC's disclosure of limited information upon which Plaintiff's designation was based is indicative of arbitrary and capricious agency action in designating him, and

suggests that OFAC's designation was agency action performed in excess of the statutory jurisdiction and authority provided by the Kingpin Act.

9.      Accordingly, through this action, Plaintiff respectfully requests the Court to revoke his SDNTK designation and blocking notice, as Defendants have violated his rights under the U.S. Constitution and the APA, and have acted in excess of their statutory authority under the Kingpin Act.  Plaintiff further requests this Court to consider other forms of relief that are deemed just and proper, including mandamus and/or remand to the Agency with the proper instructions.

### III.

### JURISDICTION AND VENUE

10.     This action arises under the United States Constitution, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Kingpin Act, 21 U.S.C. § 1901 *et seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that the matter in controversy arises under the laws of the United States, and 28 U.S.C. § 1361 ("The Mandamus Act").

11.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.

12.     Venue lies in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and (e), and 5 U.S.C. § 703.

### IV.

### PARTIES

13.     Plaintiff John Zabaneh is a Belizean citizen and currently resides in Dangriga, Stann Creek, Belize.

14.     On or about August 7, 2012, Plaintiff was designated under the Kingpin Act and his name was included on the Specially Designated Nationals and Blocked Persons ("SDN") List maintained and administered by OFAC.

15.     Defendant OFAC is a United States federal administrative agency located at the U.S. Department of the Treasury, 1500 Pennsylvania Ave., NW, Annex, Washington, DC 20220.

16.     Defendant United States Department of the Treasury is responsible for the financial and economic security of the United States.  The Department of Treasury is also responsible for overseeing various offices including OFAC.

17.     Pursuant to the Foreign Narcotics Kingpin Sanctions Regulations ("FNKSR"), 31 C.F.R. Part 598, the Secretary of Treasury delegated his authority under the Kingpin Act to the Director of OFAC.[2]  Plaintiff is informed and believes thereon that both the President of the United States and OFAC are responsible for making decisions regarding placing persons on, and removing persons from, the SDN List under the Kingpin Act.[3]  Furthermore, Plaintiff is informed and believes thereon that OFAC and certain other federal agencies are responsible for the provision of appropriate and necessary information that may be relied upon by the President in identifying foreign persons that the President determines are appropriate for sanctions pursuant to the Kingpin Act.[4]

18.     Defendant Steven T. Mnuchin is the Secretary of the Treasury of the United States. Steven T. Mnuchin is sued in his official capacity.

**V.**

**STATUTORY AND REGULATORY FRAMEWORK**

---

[2] *See* 31 C.F.R. § 598.803.
[3] *See* 21 U.S.C. §§ 1904(b) & 1904(e)(1)).
[4] *See* 21 U.S.C. § 1903(a).

19.     The Kingpin Act was designed to "provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, *whose activities threaten* the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902 (emphasis added).  As such, the Kingpin Act authorizes the President to impose blocking sanctions on "any significant foreign narcotics traffickers publicly identified" in an annual report that the President is mandated to submit to specific Congressional committees. 21 U.S.C. § 1904(b)(1) ("…there are blocked as of such date, and any date thereafter, all such property and interests in property within the United States, or within the possession or control of any United States person…").

20.     Moreover, the Kingpin Act provides additional authorities to the Secretary of the Treasury, acting in consultation with the heads of several other federal agencies, to designate "any foreign person…materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker"; "any foreign person…owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker"; and "any foreign person…playing a significant role in international narcotics trafficker." 21 U.S.C. § 1904(2)-(4).  Foreign persons who are so designated are subject to blocking sanctions under the Kingpin Act. 21 U.S.C. § 1904(b).

21.     The Kingpin Act defines the term "narcotics trafficking" as "…any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotics drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so." 21 U.S.C. § 1907(3).  Furthermore, it defines the term

"significant foreign narcotics trafficker" to mean, "…any foreign person that *plays* a significant role in international narcotics trafficking, that the President has determined to be appropriate for sanctions pursuant to [the Kingpin Act]." 21 U.S.C. § 1907(7) (emphasis added).

22.     On July 5, 2000, OFAC issued the Foreign Narcotics Kingpin Sanctions Regulations (FNKSR), 31 C.F.R. Part 598, to implement the Kingpin Act.  Pursuant to 31 C.F.R. § 598.202, all property and interests in property within the United States, or within the possession or control of any U.S. person, which are owned or controlled by a specially designated narcotics trafficker are deemed blocked.  As a result, such assets cannot be dealt or transacted in.  Persons designated pursuant to the Kingpin Act are identified by the FNKSR as specially designated narcotics traffickers ("SDNTK"). 31 C.F.R. §§ 598.313 & 598.314.

23.     Parties designated as SDNTKs are included on the SDN List maintained and administered by OFAC.  Designated parties can contest their designations according to administrative procedures established by OFAC.  The procedures governing delisting from the SDN List are set forth at 31 C.F.R. § 501.807.  Those procedures are applicable to "person[s] blocked under the provisions of any part of this chapter, including a specially designated national, specially designated terrorist, or specially designated narcotics trafficker…" 31 C.F.R. § 501.807(a).

24.     The regulations provide that a blocked person may seek administrative reconsideration and rescission of their designation.  Specifically, blocked persons may assert either that the initial designation was in error or that a fundamental change in circumstances has occurred to warrant delisting. 31 C.F.R. § 501.807.  Further, blocked persons may submit to OFAC in writing "arguments or evidence that the person believes establishes that insufficient basis exists for the designation."  31 C.F.R. § 501.807(a).

25.     Pursuant to 31 C.F.R. § 501.807(c), in relevant part, a blocked person seeking unblocking may request a meeting with OFAC.

26.     Pursuant to 31 C.F.R. § 501.807(d), following its review of a request for reconsideration, OFAC will provide a written decision to the blocked person.

27.     Notwithstanding that Constitutional due process requires OFAC to promptly disclose the evidence on which it basis its designations, OFAC's own regulations are silent as to whether the agency is required to disclose such evidence.

28.     The APA also mandates that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." *See* 5 U.S.C. § 555(b) (emphasis added). In addition, a reviewing court shall compel agency action…unreasonably delayed. *See* 5 U.S.C. § 706(1).

29.     The APA mandates that a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be: (i) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law (*See* 5 U.S.C. § 706(2)(A)); and/or (ii) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right (*See* 5 U.S.C. § 706(2)(C)).  In making such a determination, "…the court shall review the *whole record* or those parts of it cited by a party…" 5 U.S.C. § 706 (emphasis added).

## IV.

## STATEMENT OF FACTS

30.     On August 7, 2012, OFAC designated Plaintiff as a "Specially Designated Narcotics Trafficker" (*i.e.* SDNTK) pursuant to the Kingpin Act.   This designation blocked all of Plaintiff's property and interests in property that were or thereafter came within the United States or within the possession or control of a U.S. person.

31.    In its press release announcing Plaintiff's designation, OFAC broadly alleged that Plaintiff and his organization—two individuals and five companies associated with him—play a "prominent role" in narcotics trafficking in Central America, particularly Belize, and maintain a role in drug trafficking operations,[5] including with other SDNTKs.  The only information provided within the press release, in support of such broad allegations is another conclusory allegation that Plaintiff and his organization had been involved in narcotics trafficking since the 1980s.

32.    Upon receiving notice of his SDNTK designation Plaintiff began investigating how he would be able to contest OFAC's action.  This included engaging in frequent correspondence with the Embassy of the United States in Belmopan-Belize, and attempting to correspond with the United States Department of the Treasury.  Nearly two months after his designation, and based on his communications with the Embassy of the United States in Belmopan-Belize, Plaintiff was finally able to obtain the contact information needed to submit his petition for administration reconsideration of his Kingpin Act designation to OFAC.

33.    On October 3, 2012, Plaintiff submitted, without the assistance of counsel, a request for reconsideration and delisting to OFAC, invoking the delisting procedures of 31 C.F.R. § 501.807.  As set forth in that submission, and to effectively address the basis of his designation, Plaintiff requested that OFAC issue a questionnaire containing inquiries relevant to the review of Plaintiff's designation.  In a response dated November 19, 2012, OFAC acknowledged receipt of Plaintiff's submission and assigned the matter Case ID FNK-2833 and further acknowledged Plaintiff's request for a questionnaire.

---

[5] *See supra* note 1.

34.     Plaintiff promptly acknowledged receipt of OFAC's correspondence in a letter dated November 20, 2012.  Plaintiff thereafter sent follow up correspondence on January 10, 2013, inquiring as to the status of OFAC's questionnaire since he had yet to receive it, to which OFAC responded with the issuance of its first questionnaire on January 11, 2013.  The questionnaire sought detailed information regarding Plaintiff's relationships with certain other identified persons and classes of persons designated by OFAC under the Kingpin Act, including entities that were purportedly owned or controlled by him.  The questionnaire also inquired into Plaintiff's U.S. and foreign assets, his alleged involvement or dealing in narcotics trafficking and the laundering of any proceeds, and Plaintiff's status as a subject in any legal proceedings within the United States or elsewhere.

35.     OFAC's first questionnaire was deplete of any pertinent information regarding the basis for its designation of Plaintiff, thereby Plaintiff was left in the position of responding to OFAC's inquiries without any notice as to why OFAC was seeking the requested information in regards to the reconsideration of his designation.

36.     On February 8, 2013, Plaintiff responded to OFAC's questionnaire through the submission of narrative responses and corporate documents.  Collectively, the documents evidenced the legitimate operations of Plaintiff's respective companies, including activities and transactions undertaken by such companies, thereby discounting any presumption that they were used to engage in narcotics trafficking or the laundering of any ill-gotten proceeds.  Furthermore, there was an independent auditor's report attached to Plaintiff's response which confirmed the legitimacy of the business operations of those companies owned by Plaintiff.

37.     In his response, Plaintiff also disclosed information regarding his U.S. assets which included sizeable deposit and investment accounts held at three different financial institutions in

the United States.   Further, Plaintiff included information regarding his prior U.S. conviction related to the importation and distribution of marijuana.   However, the U.S. conviction, which occurred approximately thirty (30) years ago in 1986, and for which Plaintiff already served his sentence without issue, was truthfully presented as the single instance in which Plaintiff has been subject to criminal legal proceedings, and his sole involvement in conduct that could arguably be considered related to "narcotics trafficking" as that term is defined by the Kingpin Act.   Plaintiff highlighted this fact in his response, and noted that his conduct since that time has been solely focused on legitimate businesses in the agro-industry in Belize.

38.     On or about March 28, 2013, Plaintiff submitted a status inquiry to which OFAC responded by letter dated April 29, 2013.   OFAC's response stated that it was in the process of reviewing Plaintiff's case, and included follow-up inquiries to Plaintiff's previous submission, particularly the relationship between his companies that were designated in August 2012.   This second questionnaire also inquired as to Plaintiff's interest in any companies not designated in August 2012, and again inquired into Plaintiff's potential relationship to, or involvement in, narcotics trafficking and/or criminal or terrorist organizations.   The latter inquiry relating to his relationship with or involvement in narcotics trafficking had already been asked and responded to by Plaintiff.   OFAC did not state why it was again asking the same question for which it had already received a response.

39.     Plaintiff promptly responded to the second questionnaire on May 10, 2013.   In addition to providing narrative responses to OFAC's inquiries, Plaintiff included supplemental corporate documents to support his responses and verify the legitimate business activities of the companies in which he maintained an interest, including his activities in banana and citrus farming and exporting.

40.    Plaintiff also informed OFAC in his May 10, 2013 response of his efforts to obtain evidence to discount any connection between himself and Dion Zabaneh, as well as Daniel Moreno, whom were designated alongside Plaintiff and allegedly part of the "Zabaneh Organization."   Specifically, with the assistance of an attorney, Plaintiff obtained a signed affidavit from Dion Zabaneh attesting to the fact that he has "not had any contact with [his] uncle [the Plaintiff,] for many years dating back to about 2003," and has "never been involved in any business venture of any kind with [his] uncle or with anyone associated with him."   This affidavit was submitted with Plaintiff's response.

41.    Following Plaintiff's May 10, 2013 response, Plaintiff submitted several letters to OFAC regarding his reconsideration.   Specifically, letters were submitted on or about June 4, 2013, July 3, 2013, July 8, 2013, August 1, 2013, September 4, 2013, and October 11, 2013.   These submissions addressed additional points of interest relevant to Plaintiff's request for delisting; specifically, a letter addressed to the then Minister of Police, John Saldivar, of the Government of Belize discussing the unwarranted targeting of Plaintiff by local police; and a discussion of the grave financial difficulties Plaintiff's family is facing in Belize due solely to their familial relationship to Plaintiff, and specifically, the refusal of banks to effectuate transactions on their behalf as evidenced by a letter from CIBC First Caribbean International Bank.

42.    OFAC acknowledged receipt of Plaintiff's submissions through email correspondence dated July 30, 2013, and November 18, 2013.   OFAC noted that it "continues to evaluate [Plaintiff's] case and will be corresponding with [Plaintiff] in the future."

43.    In response to OFAC's email correspondence, Plaintiff submitted a follow-up letter on November 20, 2013, which included a copy of correspondence addressed to the Commissioner of Police in Belize.

44.     OFAC acknowledged receipt of these materials via email on December 12, 2013.  OFAC noted that it was "evaluating the numerous pages of information provided," and that that it "will continue to provide . . . periodic updates . . . as it looks to make its determination."

45.     On December 13, 2013, and January 20, 2014, Plaintiff submitted additional correspondence to OFAC, acknowledging receipt of OFAC's email dated December 12, 2013.

46.     Following a six-month period of silence from OFAC, Plaintiff submitted correspondence dated May 7, 2014.  Plaintiff inquired as to the status of his reconsideration request, and highlighted the personal and reputational damage caused by his continued designation.  Plaintiff concluded the letter by professing his willingness to cooperate in OFAC's investigation.  Without receiving a response from OFAC, Plaintiff submitted another status update letter on or about July 3, 2014.

47.     In a letter dated August 19, 2014, OFAC acknowledged Plaintiff's May 7, 2014 correspondence, and informed him that his request remains under review.  OFAC also invited Plaintiff to submit additional information that Plaintiff deems helpful to assist with the reconsideration process.

48.     In response, Plaintiff submitted correspondence dated August 27, 2014 and September 23, 2014, highlighting Plaintiff's prolonged designation despite his extensive two-year delisting efforts.  Plaintiff again reaffirmed his denial of any connection to narcotics trafficking and money laundering, and aptly stated that his prior conviction in the United States, which occurred more than thirty (30) years ago, should be not relied upon as a basis to conclude that he is currently engaged in narcotics trafficking or the laundering of drug proceeds.

49.     Plaintiff followed up on these submissions with correspondence dated October 31, 2014. In that letter, Plaintiff expressed his frustration with the lengthy reconsideration process, and

urged OFAC to come to a speedy conclusion.  Plaintiff reiterated his invitation to meet with OFAC to discuss the evidence apparently substantiating his Kingpin Act designation, and reasserted his innocence in regards to the conduct alleged against him.

50.    OFAC acknowledged receipt of Plaintiff's letters via correspondence dated November 6, 2014.  The letter did not provide any specific updates as to Plaintiff's reconsideration request, nor did it address any of the arguments made by Plaintiff in furtherance of delisting.  Rather, the correspondence merely stated that Plaintiff's request was under review, akin to other such responses from the agency returned throughout the reconsideration process.

51.    In response, Plaintiff submitted additional letters to OFAC on November 10, 2014, December 8, 2014, and December 17, 2014.  The November letter simply acknowledged OFAC's correspondence and reiterated Plaintiff's willingness to respond to any additional inquiries that OFAC may have.  However, Plaintiff's December correspondence letters included numerous character letters that Plaintiff had obtained from acquaintances and former business associates on his behalf.  Plaintiff followed-up on the submission of these letters via correspondence dated March 16, 2015.

52.    The submission of these letters and Plaintiff's subsequent status inquiry was met with a third OFAC questionnaire.  In a letter dated March 18, 2015, OFAC's first question sought updated information with respect to Plaintiff's current employment status and interests in Mayan King, Mid-South, Crown Paradise, and Belize Chemicals.  However, the three remaining questions re-inquired as to Plaintiff's alleged involvement with narcotics trafficking and money laundering, to which Plaintiff had already thoroughly responded to in both his February 8, 2013 response to OFAC's first questionnaire, and in response to May 10, 2013 to OFAC's second questionnaire, as well as through other prior supplemental submissions.  This third questionnaire

appeared to be nothing more than a boilerplate request for information which OFAC had already obtained from Plaintiff, and which had otherwise been consistently reaffirmed by Plaintiff throughout the delisting process.

53.     More noteworthy, however, was that the March 18, 2015 correspondence expressed OFAC's willingness to "accept [Plaintiff's] invitation for a meeting," acknowledging a delisting procedure in OFAC's own regulations, 31 C.F.R. § 501.807(c).

54.     Plaintiff promptly responded via email, confirming his interest in meeting with OFAC representatives.   Plaintiff also responded to OFAC's questionnaire on or about April 20, 2015. In his response, Plaintiff detailed the status of the aforementioned companies and explained the irreparable harm incurred by Mayan King and Mid-South as the result of his OFAC designation. Specifically, Belize Bank had closed all business accounts associated with the entities, causing an inability to continue operations.   As a result, Mayan King and Mid-South are currently in dormant status pending the outcome of Plaintiff's delisting petition.   Plaintiff also noted that Belize Bank closed the personal accounts held by Plaintiff and his mother, a non-designated person, due to the designation.

55.     Plaintiff also responded to the remaining questions re-inquiring as to his involvement in narcotics trafficking and money laundering, predominately by referring to his responses to OFAC's first and second questionnaire from two years prior.   Plaintiff also provided additional information regarding his prior 1986 drug conviction in the United States, and informed OFAC that following his release from prison, and after he was living in Belize, Plaintiff voluntarily returned to the United States for questioning by U.S. federal agents in 1990.   Plaintiff was questioned as to marijuana trafficking in Florida, and cooperated to the greatest extent possible. Plaintiff had already disclosed the existence of his prior conviction in the U.S. within his

previous responses to OFAC, of which OFAC was nevertheless most probably aware prior to its designation action.

56.    As noted above, OFAC's March 18, 2015 Questionnaire also accepted Plaintiff's invitation to meet with an OFAC representative regarding his reconsideration request.  In an email dated May 11, 2015, Plaintiff submitted a signed acceptance letter in regards to a meeting with an OFAC representative.  OFAC confirmed receipt of the signed acceptance letter via email on May 12, 2015.  In the email, OFAC stated that it would contact Plaintiff "shortly;" however, a meeting between OFAC and Plaintiff never occurred, nor did OFAC every follow up with Plaintiff about the meeting.

57.    After failing to receive additional correspondence regarding his delisting request, Plaintiff submitted a letter to OFAC on August 10, 2015.  Plaintiff stressed the harm that he and his family continued to suffer due to his OFAC designation, and appealed to OFAC to resolve the matter as expeditiously as possible.

58.    Plaintiff submitted status update letters on August 28, 2015, September 18, 2015, November 9, 2015, January 18, 2016, and February 22, 2016.  The correspondence requested that OFAC provide a substantive update regarding Plaintiff's longstanding reconsideration request, and reminded OFAC of its March 18, 2015 acceptance of Plaintiff's offer to meet with OFAC regarding his reconsideration request.

59.    More specifically, Plaintiff's November 9, 2016 submission also brought to OFAC's attention that due to Plaintiff's continued designation, banana farms with purported links to Plaintiff were dropped by their long time sole buyer, an Irish company named "Fyffes."  Fyffes' decision had a devastating impact for those farms' previously employed farm workers. Plaintiff's notice to OFAC had also been previously confirmed by an August 16, 2016 Reuters

report, that also claimed roughly 900 workers that were previously employed by such banana

farms were now out of business.  The Reuters report also claimed that Fyffes' decision caused an

instant 13.5 percent plunge in the entire nation of Belize's banana exports, and caused a "sharp

economic contraction" in the country of Belize.[6]

60.     In response to Plaintiff's plea for a decision in his case, OFAC responded with a brief

correspondence acknowledgement merely stating that Plaintiff's request is under review.   In

correspondence dated March 30, 2016, OFAC referenced the potential meeting with Plaintiff it

considered doing over a year prior, but stated that "OFAC is continuing to evaluate this request

with our partners in the U.S. law enforcement community and will notify [Plaintiff] as soon as a

decision is reached."

61.     Following the receipt of OFAC's March 30, 2016 correspondence acknowledgment,

Plaintiff submitted correspondence to OFAC requesting status updates on or about April 7, 2016,

May 5, 2016, June 10, 2016, July 1, 2016, July 25, 2016, August 29, 2016, September 19, 2016,

and October 20, 2016.

62.     Plaintiff's submission on July 1, 2016, explained that he would be furnishing an affidavit

from Daniel Moreno attesting to the fact that he does not have, nor has ever had, any connection

with Plaintiff.   Plaintiff provided a copy of the affidavit to OFAC on November 13, 2016.

Plaintiff also reminded OFAC of the collateral consequences of his continued designation,

resulting in the unemployment of hundreds of civilians in Belize.

63.     On October 20, 2016, Plaintiff submitted a status request as to his delisting petition,

which had been pending for four (4) years with no indication from OFAC as to the status of its

---

[6] Yeganeh Torbati, *How U.S. sanctions targeted a Belize banana farmer, and hurt an economy,*
REUTERS, August 16, 2016, *available at* http://www.reuters.com/article/us-usa-belize-
sanctions-insight-idUSKCN10R0DF.

investigation and/or when a decision might be reached.   Plaintiff again noted the collateral consequence of his designation that had caused the unemployment of hundreds of former banana farm workers.   OFAC did not respond to this correspondence.

64.    On December 19, 2016, Plaintiff filed a request for the administrative record relied upon in designating him, so as that he could have a meaningful opportunity to address the evidence relied upon by OFAC in designating him.   OFAC acknowledged receipt of this request on December 20, 2016; however, to date a copy of the administrative record has not been disclosed.

65.    Finally, on April 7, 2017, Plaintiff submitted a final request for delisting.   The correspondence sought an expeditious resolution to Plaintiff's designation reconsideration request, which has been pending for over four (4) and a half years.   On May 9, 2017, OFAC acknowledged receipt of that correspondence, and stated that they were working on Plaintiff's request for reconsideration, and had no further questions at this time.

66.    Plaintiff's continued designation has imposed significant financial and reputational harm on him and his family, and caused the closure of banana and citrus farms, resulting in the loss of hundreds of jobs in the local economy along with sharp economic contraction of the economy of Belize.   Not only have the welfare of Plaintiff and his family been gravely prejudiced since his August 7, 2012 designation, but on a much broader scale, so has the welfare of the hundreds of persons in Belize who lost their jobs as a collateral consequence of the designation action, and who continue to be unemployed in a region where fruit farming is a major source of employment.

67.    Plaintiff has made countless attempts to cooperate in OFAC's review of his delisting request, specifically through the submission of numerous correspondence letters, disclosures in response to OFAC's three questionnaires, and willingness to meet with OFAC at its

convenience.  In summary of Plaintiff's cooperative efforts, even assuming *arguendo* that a basis for his Kingpin Act designation previously existed, his willingness to engage in whatever conduct is necessary to remove his Kingpin Act designation exhibits a willingness to demonstrate a change in circumstances to meet the expectations for delisting by OFAC, as set forth in the Agency's own guidance[7] for its delisting procedures, 31 C.F.R. § 501.807.

68.     Through the correspondence described above, Plaintiff has continuously sought to provide OFAC with detailed evidence and arguments as to why an insufficient basis exists for his designation, including financial documentation from an independent auditor's review of the activities and transactions undertaken by business entities under his control which rebutted any allegations of the laundering of narcotics trafficking proceeds.

69.     OFAC has unreasonably prolonged its decision to remove Plaintiff from the SDN List for over four (4) years, with repeated requests for the same information that was disclosed to the Agency time and time again during the pendency of the reconsideration process.

70.     Throughout the reconsideration process thus far, OFAC has made no effort to provide Plaintiff with any pertinent information upon which it relied in designating him, nor in continuing his designation over the past four (4) and a half years.  Other than the broad and conclusory allegations provided in its August 7, 2012 press release, no other information has been made available to Plaintiff—not even the unclassified portions of the administrative record underlying his designation.  Indeed, even OFAC's three questionnaires seeking detailed responses from Plaintiff failed to notify of him of any of the bases underlying his designation. As a result, throughout the reconsideration process, Plaintiff has been unable to understand

---

[7] U.S. Dept. of the Treasury's Resource Center, *Filing a Petition for Removal from an OFAC List,* Preamble (Last Updated May 2, 2017), *available at* https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/petitions.aspx.

OFAC's reasons for its August 7, 2012 designation, nor for his continued designation.  As such, he has not been provided a meaningful opportunity to rebut his designation.

## V.

### CAUSES OF ACTION

### COUNT I – FAILURE TO CONCLUDE THE DELISTING PETITION WITHIN A REASONABLE TIME IN VIOLATION OF THE APA

71.     Plaintiff re-alleges and fully incorporates by reference the allegations in paragraphs 1-70 above.

72.     The APA mandates that agencies, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time…shall proceed to conclude a matter presented to it," and that courts "shall…compel agency action…unreasonably delayed." 5 U.S.C. §§ 555(b) and 706(1).

73.     "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." 5 U.S.C. § 551(13) (emphasis added).

74.     Plaintiff filed his request for reconsideration on October 3, 2012, invoking OFAC's procedures governing unblocking and delisting from the SDN List, 31 C.F.R. § 501.807, and for more than four (4) and a half years has continuously supplied the agency with detailed arguments and evidence establishing that an insufficient basis exists for his SDNTK designation.  During this unusually protracted reconsideration process, the continued designation has gravely prejudiced Plaintiff and his family's welfare; and most recently, the welfare of the hundreds of Belizeans who have become unemployed as a collateral result of OFAC's continued designation of Plaintiff.

75.     OFAC persists in delaying its review of Plaintiff's delisting petition without due consideration of the direct harm its delay is causing to the financial well-being and welfare of a significant group of persons, not just Plaintiff alone.   The nature and extent of the interests prejudiced by OFAC's delay is far more significant than any conceivable reasoning by OFAC in delaying its conclusion of the delisting matter for more than four and a half years.

76.     OFAC's correspondence during the reconsideration process suggests improper agency conduct.   Specifically, OFAC's questionnaires evidence an unnecessary repetition in questioning by the agency of information related to Plaintiff's involvement in narcotics trafficking and money laundering.   Such information was provided in detail by Plaintiff at the outset of the delisting process in response to OFAC's first questionnaire, however, the agency repeated the same line of inquiry in nearly identical fashion in both the second and third questionnaires.

77.     For these reasons, OFAC's failure to conclude Plaintiff's delisting matter for more than four and a half years constitutes unreasonable delay of agency action under the APA, and should be compelled by this Court.

### COUNT II – ARBITRARY AND CAPRICIOUS ACTION UNDER THE APA

78.     Plaintiff re-alleges and fully incorporates by reference the allegations in paragraphs 1-77 above.

79.     Pursuant to § 706(1) of the APA, the reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

80.     "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

81.     The evidence submitted to OFAC during the reconsideration process establishes that the Plaintiff's August 7, 2012 decision to designate Plaintiff was not supported by a rational basis. OFAC's blanket allegation of Plaintiff's involvement in narcotics trafficking in the press release is solely supported by another conclusory allegation that Plaintiff and his organization "…have been involved in narcotics trafficking since the 1980s."   OFAC's statement concerning Plaintiff's conduct in the 1980s appears to be premised upon his 1986 conviction, and is the only known evidence of Plaintiff's involvement in what could be construed as narcotics trafficking under the Kingpin Act's definition of that term.   Sole reliance on conduct from more than 30 years ago to substantiate Plaintiff's August 7, 2012 SDNTK designation is arbitrary and capricious agency action in violation of 5 U.S.C. § 706(2)(A).

## COUNT III – IN EXCESS OF STATUTORY AUTHORITY OR LIMITATIONS OF THE KINGPIN ACT

82.     Plaintiff re-alleges and fully incorporates by reference the allegations in paragraphs 1-81 above.

83.     The Court may hold unlawful and set aside agency action, findings, and conclusions found to be "…in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

84.     OFAC's authority to designate persons under the Kingpin Act is derived from its legislative purpose and design, which is to identify and apply sanctions to, "…significant foreign narcotics traffickers, their organizations, and foreign persons [who are supporters thereof], *whose activities threaten* the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902.   The Kingpin Act's formative term, "significant foreign narcotics trafficker," reflecting the statute's underlying purpose, is defined as one who "*plays* a significant role in

international narcotics trafficking…" 21 U.S.C. § 1907(7).   Additional authorities within the statute to designate supporters of significant foreign narcotics traffickers, or their actors, solely target present conduct (*e.g.* "…*materially assisting*… or *providing*…" or "*playing* as significant role in international narcotics trafficking"). 21 U.S.C. § 1904(b) (emphasis added).

85.     Accordingly, the plain language and purpose of the Kingpin Act, and the statutory authority provided therein, work in tandem to target foreign persons that are presently engaged or involved in narcotics trafficking or support thereof, not conduct that can arguably be construed as narcotics trafficking from 30 years prior.

86.     OFAC's August 7, 2012 designation, based on conduct that occurred in the 1980s, without more, is agency action in excess of statutory jurisdiction, authority, and limitations, in violation of 5 U.S.C. § 706(2)(C).

## COUNT IV – VIOLATION OF PROCEDURAL DUE PROCESS

87.     Plaintiff re-alleges and fully incorporates by reference the allegations in paragraphs 1-86 above.

88.     In accordance with post-designation due process, Plaintiff is entitled to prompt and timely disclosure of the unclassified administrative record upon which his August 7, 2012 initial designation, and any reason for his continued designation is based, along with any classified and otherwise privileged information that is essential to its upholding of the designation and/or continued designation, so that Plaintiff may have a meaningful opportunity to respond to such evidence.

89.     Since Plaintiff initiated his request for reconsideration of his SDNTK designation in October 2012, OFAC has not provided him with any portion of the administrative record or any other evidence on which it based the designation, or upon which it continues to rely upon in

maintaining his designation.  To the extent that any such information exists, Plaintiff has had to rebut the government's charges against him without notice thereof.

90.     OFAC's failure to provide information essential to the upholding of Plaintiff's designation for more than four and a half years is in violation of the Fifth Amendment's Due Process clause.

## COUNT V – OFAC'S FAILURE TO PROVIDE ANY PORTION OF THE ADMINISTRATIVE RECORD RELIED UPON FOR THE DESIGNATION WAS ARBITRARY AND CAPRICIOUS

91.     Plaintiff re-alleges and fully incorporates by reference the allegations in paragraphs 1-90 above.

92.     Pursuant to § 706(1) of the APA, the reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

93.     Without the disclosure of such information, Plaintiff is unable to understand the allegations against him to meaningfully respond through OFAC's administrative reconsideration process, and rebut such allegations.

94.     OFAC's failure to provide any information essential to the upholding of Plaintiff's designation for more than four and a half years, is arbitrary and capricious agency action, and without observance of procedure required by law, and should be unlawful and set aside.

## VI.

## RELIEF REQUESTED

NOW WHEREFORE, Plaintiff John Zabaneh prays this Court for the following relief:

a. A declaratory judgment that holds OFAC's failure to conclude Plaintiff's pending delisting petition as of the time of this filing, as unreasonable delay, in violation of the Administrative Procedure Act;

b. A writ of mandamus compelling OFAC to end its unreasonable delay in concluding Plaintiff's pending delisting petition;

c. A declaratory judgment that holds unlawful, and sets aside OFAC's designation of Plaintiff as arbitrary, capricious, and/or an abuse of discretion, in violation of the Administrative Procedure Act;

d. A declaratory judgment that holds unlawful and sets aside OFAC's designation of Plaintiff as being in excess of its statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the Administrative Procedure Act;

e. A writ of mandamus requiring OFAC to provide the unclassified portions of the administrative record;

f. A declaratory judgment that holds unlawful OFAC's failure to provide the unclassified portions of the administrative record as arbitrary, capricious, and/or an abuse of discretion, in violation of the Administrative Procedure Act, and ordering OFAC to provide such portions;

g. A writ of mandamus and/or declaratory judgment requiring OFAC to provide all other portions of the administrative record and any other information, documents, and materials essential to OFAC's upholding of Plaintiff's August 7, 2012 SDNTK designation and the continuing basis for his designation on the SDN List;

h. Awarding Plaintiff's attorney's fees and costs incurred in this action; and

i. Awarding Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of July, 2017.

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@ferrariassociatespc.com
DC Bar No. 978253

*Attorney for Plaintiff*
*John Zabaneh*